Thomas L. MCCRAY, Plaintiff,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant.

No. CIV.A. 00–B–1504–N.

United States District Court, M.D. Alabama, Northern Division.

Oct. 22, 2001.

Micki Beth Stiller, Law Office of Micki Beth Stiller Montgomery, AL, for plaintiff.

R. Randolph Neeley, U.S. Attorney's Office Montgomery, AL, for defendant.

## MEMORANDUM OPINION

BOYD, United States Magistrate Judge.

## I. INTRODUCTION

The plaintiff, Thomas L. McCray ("McCray"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq. and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. alleging that he was unable to work because of a disability. His application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] See Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).[2] Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II. STANDARD OF REVIEW

 This court's review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a de novo review or substitute its own judgment for that of the Commissioner. *Walden v.. Schweiker*, 672 F.2d 835 (11th Cir. 1982). Instead, the court's role is to scrutinize the whole administrative record to insure that the Commissioner's decision is supported by substantial evidence, *Hills-*

man v. Bowen, 804 F.2d 1179, 1180 (11th Cir.1986), and free from legal error. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir.1987). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). The evidence supporting the Commissioner's decision does not need to be overwhelming, but it must provide more than a mere scintilla of support. *Hillsman*, 804 F.2d at 1181. The court must also be cautious not to reverse the Commissioner's decision because it would have reached a different conclusion based on the evidence. *See MacGregor*, 786 F.2d at 1053.

## III. ADMINISTRATIVE FINDINGS

The plaintiff was 37 years old on the date his insured status expired and, based on his testimony that he completed the seventh grade, the ALJ determined he has a marginal education.

Although McCray alleged disability because of diabetes mellitus, kidney stones, stomach pain, poor vision, and chest pain, the ALJ determined that the medical evidence established that only McCray's diabetes mellitus was a severe impairment, and that he had no impairment or combination of impairments which met, or equaled, the criteria of any impairment listed in Appendix 1, Subpt. P, Regulation No. 4. In the ALJ's view, McCray's statements concerning his impairment and its impact on his ability to work were not entirely credible.

The ALJ further determined that McCray lacked the residual functional ca-

1. Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103–296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

2. Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

pacity ("RFC") to lift and carry more than 20 pounds or more than ten pounds on a regular basis; to sit, stand, and/or walk for up to six hours on an eight-hour basis; to perform outdoor work in extreme heat; to perform work which required highly aerobic activities; to work around heights, moving machinery, or vehicles; or to perform work requiring fine visual acuity. That RFC precluded the performance of McCray's past relevant work as a farm worker and laborer but the ALJ concluded that McCray was not disabled because he had the RFC to perform a limited range of light work. Therefore, the ALJ concluded that McCray was not disabled at any time through the date his insured status expired, or at any time through the date of her decision.

## IV. ISSUES

In arguing that the ALJ's decision is not supported by substantial evidence, McCray presents five issues for the court's review, as follows: (1) the vocational expert's testimony was based on incomplete facts; (2) the ALJ failed to consider whether the plaintiff satisfied Listing 9.08 for Diabetes Mellitus; (3) the ALJ failed to consider all of the plaintiff's impairments; (4) the ALJ erred by failing to follow the Commissioner's pain standard in evaluating the severity of the plaintiff's subjective complaints, and by failing to specify explicit, legally sufficient reasons for rejecting the credibility of his testimony; and (5) the ALJ erred in failing to order consultative examinations. Although none of these claims of error warrants reversal, the court will discuss each of them in turn.

## V. DISCUSSION

### A. VOCATIONAL EXPERT'S TESTIMONY

■ In the fourth step of the sequential evaluation process, the ALJ sought to determine McCray's RFC by propounding hypothetical questions to the vocational expert ("VE"). The law clearly requires that such hypothetical questions comprehensively describe the claimant's impairments. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir.1985). McCray argues that the ALJ's hypothetical questions to the VE omitted reference to McCray's alleged illiteracy, and instead, improperly presumed that McCray had a marginal education.

One of the ALJ's hypothetical questions did ask the VE to assume that McCray had a marginal education, (R. 55), but another version, as follows, referenced his alleged illiteracy:

Q: Okay. Now, for the second hypothetical because I didn't include it in the first let's assume that this individual is functionally illiterate, meaning that he really can't do anything that involves writing. Does that affect these jobs in any way?

A: It would reduce the positions by approximately 25 percent. (R. 57).

■ Moreover, substantial evidence supports the ALJ's conclusion that McCray was not illiterate despite his testimony that he completed the seventh grade only after failing the fifth and sixth grades and that he was unable to read and write (R. 36, 39). Relying principally on his numerical grade level, the ALJ concluded that McCray had a marginal education.[3]

3. The Social Security Regulations, 20 C.F.R. § 404.1564(a) and (b), provide the following directions about use of a claimant's education as a vocational factor:

(a) Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning

ability, communication skill, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have intellectual abilities, although you may have

(R. 19). McCray argues that his claimed illiteracy contraindicated the ALJ's reliance on his numerical grade level as the sole indicator of his educational abilities. The ALJ did consider other relevant evidence, including McCray's previous work at a semi-skilled level requiring technical knowledge or skills and supervisory responsibilities. (R.19, 54–55, 116). A claimant's "past work experience and the kinds of responsibilities [the claimant] had when ... working may show ... intellectual abilities, although [the claimant] may have little formal education." 20 C.F.R. § 404.1564(a). Although the ALJ did not mention it, McCray indicated on a daily activities questionnaire that he sometimes read the newspaper and read "not very often." (R. 111). Given the court's deferential standard of review, *Hillsman*, 804 F.2d at 1181, the court deems the evidence sufficient to support the ALJ's conclusion

that McCray had intellectual abilities commensurate with at least a marginal level of education.[4]

## B. LISTING 9.08

■■ McCray next contends that the ALJ erroneously failed to consider whether he satisfied the requirements for establishing disability under 20 C.F.R., part 404, subpart P, Appendix I, Listing 9.08.[5] The claimant has the burden of proving disability by presenting evidence to meet or equal a listing. *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987). To prove a disability under one of the listed impairments, the claimant must provide medical evidence of specific findings in the listing, and not merely provide evidence of a listed diagnosis. *Id.* In support of his contention that he met or equaled requirements for establishing a listed impairment, McCray primarily relies on the April 20, 1998 opin-

---

little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work. 20 C.F.R. § 404.1564(a).

(b) ... the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. 20 C.F.R. § 404.1564(b).

Pursuant to 20 C.F.R. § 404.1564(b)(1), an individual is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." The definition of a marginal education connotes "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs" and "generally ... formal schooling at a sixth grade or less is a marginal education." 20 C.F.R. § 404.1564(b)(2).

4. The ALJ did not rely on the Commissioner's Medical–Vocational Guidelines but she did use them as a framework for decision-making. The court observes that even if the ALJ had determined that McCray was illiterate, McCray would not be entitled to a finding of

disability under the Commissioner's guidelines given his RFC, his age and past work experience. For instance, under Rule 202.00 of the Medical–Vocational Guidelines, an illiterate younger individual whose maximum sustained work capability is limited to light work as a result of a severe impairment and who has previously performed unskilled work is not disabled.

5. Listing 9.08 requires:

Diabetes mellitus. With:
A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
B. Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pCO2 or bicarbonate levels); or
C. Amputation at, or above, the tarsal region due to diabetic necrosis or peripheral arterial disease; or
D. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.
20 CFR Pt. 404, Subpt. P, App. 1, § 9.08.

ions of his treating physician, Dr. Ronald C. Hartsfield ("Dr.Hartsfield"), as follows:

> Thomas McCrae [6] [sic] is a patient who I follow with type I diabetes mellitus. He is dependent on twice daily insulin injections to maintain health. Over the past six months Mr. McCrae has been doing poorly. He has had uncontrolled hyperglycemia with polyuria and weight loss. I think that the recent loss of glycemic control has been related to the patient's inability to regularly purchase insulin and insulin supplies. Given Thomas McCrae's current medical situation I think that it would be impossible for him to be involved with gainful employment. (R. 205).

■ McCray argues that Dr. Hartsfield's statements required the ALJ to determine that his diabetes was uncontrolled as described in Listing 9.08. Contrary to McCray's claim, Dr. Hartsfield's opinion does not establish that his diabetes was typically uncontrolled when he took his medication as prescribed. *See Epps v. Harris,* 624 F.2d 1267, 1270 (5th Cir.1980) (finding that claimant's diabetes and other impairments "were controlled or controllable by treatment and were not incapacitating illnesses.") Although McCray suffered intermittent episodes of uncontrolled hyperglycemia while treated by Dr. Hartsfield, the ALJ found those episodes most often resulted from McCray's inconsistent compliance with prescribed medication. (R. 204, 206–14). When McCray appropriately treated his diabetes with prescribed doses of insulin, his symptoms abated (R. 217A), and the ALJ further noted:

During a six month period between September, 1997 and March, 1998, Mr. McCray did not seek medical follow up and was occasionally unable to afford his insulin. Not unexpectedly, he experienced significant weight loss, increase of blood glucose and polyuria during this period. However, once he reestablished an appropriate insulin level, his symptoms were controlled. (R. 15).

In sum, the ALJ's findings regarding the nature and severity of McCray's diabetic impairment are squarely in agreement with Dr. Hartsfield's statements and also supported by substantial evidence.

## C. PLAINTIFF'S IMPAIRMENTS

■ McCray alleges that the ALJ failed to consider his impairments in combination because his decision does not mention the effects of his shoulder and arm pain, shortness of breath, and chronic back pain.[7] It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments. *Davis v. Shalala,* 985 F.2d 528, 533 (11th Cir.1993); *Swindle v. Sullivan,* 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen,* 826 F.2d 996, 1001 (11th Cir.1987). If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling. *Walker,* 826 F.2d at 1001. The ALJ must evaluate the combination of the claimant's impairments with respect to the effect they have on the ability to fill the duties of work for which he or she is otherwise capable of performing. *Lucas v. Sullivan,* 918 F.2d 1567, 1574 (11th Cir.1990). The ALJ is required

---

**6.** Although Dr. Hartsfield misspelled McCray's name, it is evident that he was referring to McCray and not any other patient.

**7.** McCray also argues that the ALJ failed to consider his illiteracy and "possible mental

retardation" in combination with all of his other impairments in determining his RFC. However, at the hearing, only McCray's alleged illiteracy was at issue. As the court's previous discussion shows, the ALJ did consider McCray's illiteracy, along with his other impairments, in developing his RFC.

to make specific and well-articulated findings as to the effect of the combination of impairments. *Walker,* 826 F.2d at 1001.

For McCray's RFC, the ALJ considered medical evidence regarding all of McCray's severe and non-severe impairments and also weighed the functional limitations posed by those impairments. (R. 15–18). While she did not characterize them as being severe or non-severe, the ALJ also considered, and properly discounted, McCray's complaints of shoulder pain, and dyspnea, or shortness of breath, and specifically stated that she considered McCray's impairments both singly and in combination. (R. 16). "This language has been held sufficient to meet the requirement of considering impairments in combination." *Reeves v. Bowen,* 841 F.2d 383, 385 (11th Cir.1988)

Although the ALJ did not discuss McCray's complaints of chronic back pain, there is scant medical evidence to support that complaint. On July 19, 1999, Dr. Hartsfield noted McCray's complaints of a several-weeks history of back pain in the L4 or L5 distribution suggestive of radiculopathy and "a potential disc problem." (R. 275). Dr. Hartsfield's notes indicate a planned referral to another physician, (R. 275), but no documentation for that consultation, and no other documented episodes of McCray's back pain appear in the record. McCray did not indicate at the hearing that his claims of disability were premised on back pain or that he had functional limitations therefrom.

An ALJ must consider "all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand...," *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir.1984), but "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998). Further, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was

not considered." *Id.; see also Wheeler v. Apfel,* 224 F.3d 891, 896 (8th Cir. 2000)("That the ALJ did not attempt to describe the entirety of Wheeler's medical history does not support Wheeler's argument that the ALJ disregarded certain aspects of the record.") The evidence in the administrative record, combined with the ALJ's specific findings, establish that the ALJ based his decision that the Plaintiff was not disabled as a result of the combination of his impairments upon substantial evidence and a proper application of the relevant law.

## D. SUBJECTIVE COMPLAINTS

McCray's claim that the ALJ erred by discrediting his subjective complaints for insufficient reasons lacks merit. In examining a claimant's complaints of pain and other objective medical symptoms, "[t]he Secretary must consider a claimant's subjective testimony of pain if she finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain." *Foote v.. Chater,* 67 F.3d 1553, 1560 (11th Cir.1995) (citations omitted). "If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir.1992) (citations omitted).

The ALJ properly applied this evidentiary analysis and first determined that McCray's underlying medical condition, diabetes, was capable of causing pain. However, the ALJ found no evidentiary basis for either the second or third parts of the pain standard and detailed the relevant facts underlying his findings that: (1) the

objective medical evidence did not support McCray's subjective complaints of pain and other symptoms to the extent which he alleged, and (2) the objectively determined medical conditions were not of such severity that they could reasonably be expected to cause the alleged pain. (R. 17–18). The ALJ reasoned as follows:

The claimant's statements concerning his impairment and his ability to work are not entirely credible. Although it is clear Mr. McCray considers himself unable to work, his activities of daily living reveal that he is capable of performing sustained physical activities, albeit at a lessor [sic] level than he had once done. (R. 16).

. . . .

... the claimant has not alleged any pain arising from his diabetes. He has alleged stomach pain and chest pain. However, there is no medical evidence documenting continuing conditions which could cause that pain. He was hospitalized for alcoholic pancreatitis in 1996, but has required no additional treatment. His exercise stress test conclusively ruled out ischemia. He [sic] claimant takes no pain medication, prescribed or over-the-counter. He testified that he limits his activities due to dizziness and the heat. Mr. McCray has alleged that he experiences some pain in his upper extremities, however, as has been mentioned, although orthopedic referral was made, he did not submit any evidence regrading whether he actually sought that treatment. Accordingly, the undersigned cannot find that the claimant suffers from pain of a "disabling" degree. (R. 17).

 In discrediting McCray's allegations of pain and other symptoms, the ALJ correctly found that his subjective complaints were not credible to the extent alleged because, in part, they were not supported by substantial medical evidence of record. *See Foote,* 67 F.3d at 1560. Although McCray made numerous allegations of pain and other symptoms, including those relating to his diabetes, kidney stones, stomach pain, vision problems, shoulder pain, and chest pain, the ALJ found that the objective medical evidence did not support the degree of disability alleged by the claimant. (R. 15–16). The ALJ determined not only that McCray's diabetes was controlled with medication but also that McCray did not allege any pain arising from his diabetes. (R. 15, 404–17A). The ALJ also found that Dr. Hartsfield referred McCray to a gastroenterologist for his complaints of abdominal pain, but the record does not document any examination or diagnosis based on the referral. (R. 209). The abdominal pain which McCray experienced in 1996 from alcoholic pancreatitis resolved with treatment. (R. 147–167).

McCray claimed blurred vision, but his ophthalmological examination by Dr. Nicholas E. Barreca revealed no evidence of proliferative diabetic retinopathy and latent hyperopia, and no need for corrective lenses. (R. 202–203). Although McCray twice complained to Dr. Hartsfield about shoulder pain from recurrent shoulder dislocations, there is no evidence that he pursued his treating physician's referral to an orthopedist. (R. 209–210). The ALJ rejected McCray's claims of exertional dyspnea and chest pain because, according to the cardiologist who interpreted the report, an exercise test was clinically negative and did not fulfill the criteria for ischemia. (R. 200–201, 17). The ALJ also buttressed his credibility finding on the nature and course of treatment and recommendations by the plaintiff's treating physician in observing that McCray did not receive a prescription for pain medication. (R. 133 –134). *See Harwell v. Heckler,* 735 F.2d 1292, 1293 (11th Cir.1984)("ALJ properly considered a variety of factors, including the claimant's use of pain-killers and

his daily activities, in making the finding about pain.")

Moreover, the ALJ properly took account of McCray's daily activities in deciding that his subjective complaints were not fully credible. *See Macia v. Bowen,* 829 F.2d 1009, 1012 (11th Cir.1987). As recounted by the ALJ, McCray's daily activities included: occasionally mowing the yard, and cleaning his home; attempting to perform mechanical work; walking around the house; and walking about 50 to 100 yards to his father's home to perform chores such as fixing his lawn mower. (R. 16, 36, 47, 51–52). He also admitted that he could lift objects weighing up to 20 pounds. (R. 20). The ALJ ultimately determined that McCray retained the RFC for a limited range of light work.[8]

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Wolfe v. Chater,* 86 F.3d 1072, 1079 (11th Cir. 1996)("The ALJ's task is to examine the evidence and resolve conflicting reports."); *Carnes v. Sullivan,* 936 F.2d 1215, 1219 (11th Cir.1991)(holding that "the credibility of witnesses is for the Secretary to determine, not the courts.") To the extent that the ALJ detailed the relevant facts underlying her finding that McCray's testimony was not fully credible, her credibility finding is entitled to substantial deference. *Marbury,* 957 F.2d at 839. While McCray may disagree with the manner in which the ALJ took account of this evidence, the

court cannot reweigh the evidence. *Sewell v. Bowen,* 792 F.2d 1065, 1067 (11th Cir. 1986).

### E. CONSULTATIVE EXAMINATIONS

McCray's final contention is that the ALJ erred in failing to obtain consultative opinions concerning the nature and impact of his mental limitations and shoulder problem on his ability to work. While a claimant has the burden of establishing a prima facie case of disability, it is axiomatic that the ALJ has a concomitant duty to fully develop the record which exists, whether or not a claimant is represented by counsel. *Clark v. Schweiker,* 652 F.2d 399, 404 (5th Cir. Unit B July 1981). This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981). Ordering a consultative examination where one is necessary to make an informed decision is one means by which an ALJ discharges his duty to fully develop the record. *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests."). Although it is within the ALJ's discretion to order a consultative examination where he determines one is warranted, "[i]t is reversible error for an ALJ not to order a consulta-

---

**8.** According to 20 CFR § 404.1567(b), light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

tive examination when such an evaluation is necessary for him to make an informed decision." *Reeves*, 734 F.2d at 522 n. 1.

■ McCray argues that his testimony of illiteracy and a seventh grade education gave the ALJ a clear basis for ordering a consultative examination to ascertain any mental retardation. The argument is not well-taken. The ALJ's finding that McCray possessed intellectual abilities at least at the marginal level is supported by evidence of his ability to read and his work at some semiskilled jobs. *Compare Gasaway v. Apfel*, 187 F.3d 840, 843 (8th Cir. 1999)(ALJ should have ordered a consultative examination where the ALJ possessed, from the beginning, various reports showing that claimant "had always attended 'special education' classes in school and that her verbal IQ was so low that she could presumptively be considered mentally retarded" and other documents in the record "contained specific references to learning problems and to a medical history noting mental retardation").

McCray did not satisfy his duty to put any alleged mental impairments into controversy by adducing competent evidence of the same. *See Howell v. Sullivan*, 950 F.2d 343, 348 (7th Cir.1991) ("It is the claimant, however, who bears the responsibility of providing medical evidence of a mental impairment."); 20 C.F.R.

§ 404.1516. During the administrative proceedings which preceded the hearing before the ALJ, McCray did not allege mental retardation as the basis for his disability claims, and he did not request an IQ test. At the hearing, McCray and his attorney raised the possibility only that he was illiterate, but not that he was retarded. The ALJ did not have a responsibility to guess that alleged mental retardation formed the basis for McCray's disability claims. *See Reeves v. Bowen*, 841 F.2d 383, 385 (11th Cir.1988)(the ALJ did not err in not ordering a consultative exam because "[n]othing in the record at the initial hearing warranted a finding that claimant's IQ was so low that he met the listings or that further development was indicated").

■ Nor was a consultative orthopedic examination necessary based on McCray's subjective complaints of shoulder pain. Although Dr. Hartsfield referred him for an orthopedic examination due to his complaints of "recurrent shoulder dislocation," the results of those examinations are not a part of this record. (R. 208–210); *See* 20 C.F.R. § 404.1512(a) & (c) (instructing claimant that ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").[9] Dr. Hartsfield docu-

---

9. The court recognizes that, in some instances, to fully develop the record an ALJ has a duty to contact a physician for supplemental records or clarification. The regulations provide:

We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source.

20 CFR § 404.1512(e).

However, on the date of the hearing, the ALJ specifically asked McCray's attorney if he needed additional time to obtain any medical records, and after he responded affirmatively, she agreed to grant a 30 day extension of time so that he could obtain them. (R. 33). While the ALJ is required to fully develop the record before ruling on claims of disability, she is under no duty to "go to inordinate lengths to

mented those complaints of shoulder pain on June 27, 1997, and June 30, 1997, and scheduled a follow-up examination for McCray in three months. (R. 209–210). However, when Dr. Hartsfield saw McCray in September 30, 1997, McCray did not mention any complaints of shoulder pain (R. 208), and there is no evidence that McCray received any pain medication for that problem. (R. 134). Accordingly, the ALJ properly determined, from substantial evidence, that although McCray experienced upper extremity pain due to a shoulder problem, it was not disabling pain and it did not preclude him from performing light work. That finding was consistent with McCray's own estimation of his ability to use his upper extremities. (R. 50).

■ An ALJ is not required to order a consultative examination for every impairment which a claimant may allege. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir.1989). Rather, a consultative examination is only required when "necessary" to assist the ALJ in making an informed decision. *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir.1977)("To be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision."). The ALJ appropriately concluded that a consultative examination was not necessary in this case.

## VI. CONCLUSION

For the foregoing reasons, the court finds that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

A separate Order will be entered.

develop a claimant's case." *Thompson v. Cal-*

## ORDER

In accordance with the memorandum opinion entered herewith, it is

ORDERED AND ADJUDGED that the decision of the Commissioner be, and is hereby, AFFIRMED and that this case be, and is hereby, DISMISSED with prejudice. It is further

ORDERED that costs be, and are hereby, taxed against the plaintiff.

*ifano,* 556 F.2d 616, 618 (1st Cir.1977).