Pamela VENETTE [1], Plaintiff,

v.

Kenneth S. APFEL, Defendant.

No. 97–1987–CIV.

United States District Court,
S.D. Florida.

June 4, 1998.

---

1. By order of February 13, 1998, the undersigned entered an order substituting Plaintiff Pamela Venette for her deceased husband, former Plaintiff Gary Venette.

1308

Lyle D. Leiberman, Miami, FL, for Pamela A. Venette, plaintiff.

United States Attorney's Office, for Kenneth A. Apfel, defendant.

NESBITT, District Judge.

### ORDER

This cause comes before the Court upon the Report and Recommendation of Magistrate Judge Johnson, entered April 15, 1998, regarding Plaintiff's Motion for Summary Judgment filed November 3, 1997 and Defendant's Cross Motion for Summary Judgment filed November 18, 1997.

Pursuant to 28 U.S.C. § 636(b)(1)(C), after a magistrate judge files a Report and Recommendation:

[w]ithin ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

28 U.S.C. § 636(b)(1)(C). At the latest, therefore, objections to the April 15, 1998 Report and Recommendation were due on May 4, 1997. As of the date of this Order, however, no party has filed an objection to the Magistrate Judge's Report and Recommendation, and no party has moved for an extension of time in which to file objections.

For the reasons stated in the Magistrate Judge's Report, and upon a *de novo* review of the entire file, including the Motions for Summary Judgment and the Responses, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment filed November 3, 1997 is **GRANTED** and the Decision of the Commissioner is **REVERSED.** Defendant's Cross Motion for Summary Judgment filed November 18, 1997 is **DENIED.** Plaintiff shall file a proposed Final Judgment Order and an affidavit detailing all monetary awards entitled to within 15 days of this Order.

### *REPORT AND RECOMMENDATION*

JOHNSON, United States Magistrate Judge.

**THIS CAUSE** is before the Court on Plaintiff's Motion for Summary Judgment (Docket Entry No. 14), seeking reversal of the Social Security Administration's (hereinafter "SSA") denial of disability insurance benefits, and on Defendant's Motion for Summary Judgment (Docket Entry No. 13). This matter was referred to the undersigned United States Magistrate Judge by the Honorable Lenore C. Nesbitt, United States District Judge for the Southern District of Florida, for preliminary review of the Administrative Record (hereinafter "R" or "Record") and a Report and Recommendation as to whether the Record contains substantial evidence to support the Commissioner's findings, and is now ripe for judicial review. For the following reasons, this

Court recommends the decision of the Commissioner be reversed.

## I. *PROCEDURAL BACKGROUND*

Plaintiff Gary J. Venette, now Pamela Venette, (hereinafter "Plaintiff") filed an application for Social Security disability insurance benefits (hereinafter "benefits") on July 28, 1994, alleging disability since October 1, 1991. (R. 120). The application was denied twice, the first time on November 14, 1994, (R. 139), and again on reconsideration on February 3, 1995 (R. 136). Plaintiff then requested a de novo administrative hearing, (R. 90), which was held on February 6, 1996. (R. 92–119). At the beginning of this hearing, Plaintiff's counsel amended the alleged date of the onset of Plaintiff's disability to July 2, 1993. (R. 96). On May 10, 1995, the Administrative Law Judge (hereinafter "ALJ") issued a decision in which he found that the medical evidence established that Plaintiff "ha[d] chronic obstructive pulmonary disease," but "ha[d] the residual functional capacity to perform work related activities involving 'sedentary' work that does not place him in environments with concentrated exposure to fumes, chemicals, dust, gases, and extreme temperature changes and humidity levels." (R. 81, Finding 5). The ALJ then found that Plaintiff could perform his past relevant work as a working supervisor. (R. 81, Findings 6–7).

Next, Plaintiff sought review by the Appeals Council. (R. 61, 63–4). On May 2, 1997 the Appeals Council affirmed the ALJ's decision as the final decision of the Commissioner of Social Security. (R. 2–3). Plaintiff proceeded to file a timely complaint seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## II. *FACTUAL BACKGROUND*

Plaintiff was 50–years old on October 1, 1991, the date on which he alleged he became disabled, and was 52–years old when he filed his application for benefits. He went to school through the eighth grade, and could read and write in English. (R. 98). His past relevant work was as a working supervisor in manufacturing, in which he set up, fixed, and operated machines which manufactured twist drills. (R. 146–47). The ALJ found Plaintiff had not engaged in substantial gainful activity since his amended alleged onset of disability date of July 2, 1993. (R. 81, Finding 2).

Plaintiff claimed disability due to his chronic obstructive pulmonary disease and the coughing, choking, wheezing and fatigue with which it was allegedly accompanied. The earliest medical reports in the record are those of Jonathan Fierer, M.D., and they cover the period from March 8, 1993 through August 5, 1994. (R. 156–64). Dr. Fierer's diagnoses included chronic obstructive pulmonary disease (COPD)/obstructive airways, as diagnosed through pulmonary function tests, alcoholism and tobacconism. (R. 163). On August 30, 1993, Dr. Fierer wrote that Plaintiff had been experiencing a week of headaches, neck pain/strain, and coughing; also, his right ear was clogged with drainage. (R. 162). On January 5, 1994, Dr. Fierer wrote that Plaintiff weighed 138–pounds, and that he probably had sinusitis. At that time, Dr. Fierer noted that Plaintiff was complaining of a problem with his right ear, slight diarrhea, and a feeling that his whole head felt as if it were "plugged." (R. 161).

On January 25, 1994, Plaintiff weighed 125–pounds, which led Dr. Fierer to write that he had lost 13–pounds and could not eat. When he drank liquids, he vomited, and he had been having diarrhea for weeks. He was short of breath and, due to weakness, could walk only short distances. Dr. Fierer diagnosed Plaintiff as having bronchospastic bronchitis, weight loss/anorexia, and possible malnutrition. (R. 160). On January 28, 1994, Dr. Fierer wrote that Plaintiff was feeling much better. He could force fluids and food into his system without vomiting, but was still suffering from anorexia. He could walk slowly with less shortness of breath. Dr. Fierer's diagnosis at this time was severe asthmatic bronchitis. (R. 159). On February 18, 1994, Dr. Fierer reported that Plaintiff was gaining weight, that his weight was up to 130.5–pounds, and that he was on his way to recovering from the severe asthmatic bronchitis. Although Plaintiff was still coughing, Dr. Fierer's report stated that he could work in his yard for 1–1½ hours. (R. 158).

On April 25, 1994, Dr. Fierer diagnosed Plaintiff with COPD responsive to inhaled

steroids and allergic rhinitis. (R. 157). On June 24, 1994, Dr. Fierer noted that Plaintiff had complied with his orders to inhale two puffs of Aerobid twice daily. Plaintiff told Dr. Fierer that he had resumed drinking during the course of the preceding month, i.e. that he had been drinking ten to twelve beers daily, but that he could stop as usual. Dr. Fierer's report states that Plaintiff reported some shortness of breath with exertion, such as mowing the lawn. Dr. Fierer diagnosed Plaintff as having bronchospastic COPD, which could not be completely controlled with inhaled Corticosteroids, and alcoholism.

On August 5, 1994, Dr. Fierer wrote that Plaintiff was doing quite well with two inhalers, but that his oropharynx showed multiple severe rhonchi. He diagnosed COPD, though under control, two middle ear infections, and alcoholism. Dr. Fierer wrote that Plaintiff was still drinking a couple of beers a day, but that he felt this was okay since Plaintiff was continuing to eat. Fierer noted that Plaintiff had no interest in refraining from drinking since he felt he had it under control. (R. 156).

The next set of medical records for consideration were those created by Victor Genchi, M.D., a specialist in internal medicine, and they cover the period between October 24, 1994 through November of 1995. When he first examined Plaintiff, Dr. Genchi diagnosed him as having COPD, a history of alcohol abuse, and chronic sinusitis. (R. 168). Dr. Genchi performed a pulmonary function study on Plaintiff at the Good Samaritan Medical Center on October 28, 1994, which revealed a FEV1 post-bronchodilator of 2.4 liters, 55% of the predicated value. The MVV after bronchodilator was 65.84 liters/minute, 45% of the predicated value. "Severe mucous production" was observed, and Plaintiff stated that this was normal for him. (R. 170). The FVC and FEV1 improved significantly after bronchodilator administration. The MVV was reduced out of proportion to the other parameters. The single breath diffusing capacity was "severely reduced," and the "impression of the study" was:

> Primary obstructive ventilatory dysfunction of moderate to severe degree. The post bronchodilator improvement in the FEV1 and the FVC is significant indicating an element of bronchospasm.

(R. 171).

On November 16, 1994, Dr. Genchi wrote that pulmonary functions testing showed bronchospasm and positive bronchodilator response. He recommended consideration of a home nebulizer. (R. 166). On February 6, 1995, Dr. Genchi diagnosed Plaintiff as having COPD and acute bronchitis. (R. 194). On August 30, 1995, Dr. Genchi wrote that Plaintiff was stable and doing well. He added Xanax, Epipen, and oxygen to Plaintiff's medications. (R. 195–96). Dr. Genchi continued to adjust Plaintiff's medications on November 13, 1995. (R. 198).

On February 7, 1996, Dr. Genchi answered interrogatories and provided a medical source statement regarding Plaintiff's ability to perform work related activities despite his impairments (medical assessment) as called for in the regulations. 20 C.F.R. § 404.1513(b)(6) and (c). Dr. Genchi examined Plaintiff on six occasions between October 24, 1994 and November 13, 1995. His diagnosis was: "Chronic Obstructive Pulminary Disease, severe, with Bronchospasm responsive to Bronchodilator." (R. 187). This diagnosis was based, in part, on the pulmonary functions testing performed on October 28, 1994 and March 17, 1993. Genchi wrote that Plaintiff's symptoms were extreme shortness of breath upon the slightest exertions. When asked if Plaintiff had a medically determinable impairment which could reasonably have been expected to cause these symptoms, Dr. Genchi responded, "Yes, 100%." (R. 187). In Dr. Genchi's medical opinion, Plaintiff's symptoms and resulting functional restrictions had been present since at least July of 1993 based on the pulmonary function testing performed on March 17, 1993. (R. 188).

Plaintiff died on September 9, 1997 due to cardiac arrest, arrhythmia, and severe chronic obstructive pulmonary disease.

### III. *STANDARD OF REVIEW*

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evi-

dence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Wolfe v. Chater*, 86 F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990); *McDaniel v. Bowen*, 800 F.2d 1026, 1028 (11th Cir.1986). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988). Further, the reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). The court may not, however, decide facts anew, reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Miles* 84 F.3d at 1397; *Baker o/b/o Baker v. Bowen*, 880 F.2d 319 (11th Cir.1989); *Bloodsworth*, 703 F.2d at 1239.

This restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. *Brown v. Sullivan*, 921 F.2d 1233, 1235 (11th Cir.1991); *Martin*, 894 F.2d at 1529 ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal"); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir.1991). *See also Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

## IV. *LEGAL ANALYSIS*

Regulations promulgated by the Commissioner establish a five-step sequential analysis to arrive at a final determination of disability. 20 C.F.R. § 416.920(a)(f). The ALJ must first determine whether the plaintiff is presently employed; if so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or combination of impairments, if not, then a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 404.1520(c). At step three, the ALJ compares the plaintiffs severe impairments to those in the listings of impairments. 20 C.F.R. § 404.1520(d). Step four involves a determination of whether the impairments prevent the plaintiff from performing his or her past relevant work. If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the plaintiff can perform. 20 C.F.R. § 404.1520(e).(f).

In the instant case, the ALJ determined that Plaintiff had the residual functional capacity to perform "sedentary" work and therefore, could have returned to his past relevant work as a working supervisor as long as he was not exposed to environmental irritants, e.g. fumes, dust, gases, etc. (R. 81, Findings 5–7). Consequently, the ALJ ended at step four of the sequential analysis, finding Plaintiff was not disabled under the Social Security Act. (R. 81, Finding 8).

Plaintiff challenges the ALJ's decision on the grounds that it was both unsupported by substantial evidence and not based upon the appropriate legal standards. Specifically, Plaintiff alleges three errors on the part of the ALJ: (1) the ALJ simultaneously found that Plaintiff could perform "sedentary" work and that Plaintiff's past relevant work frequently required him to lift up to ten (10) pounds, an amount which exceeds the exertional limits of "sedentary" work; (2) the ALJ failed to properly refute the medical opinions of Dr. Genchi, Plaintiff's treating

physician; and (3) the ALJ failed to apply the two-prong test for evaluating the credibility of Plaintiff's testimony regarding his pain. *See* Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") at 2–3. Each of these charges of error shall be addressed in turn.

### A. Did the ALJ Err in Finding that Plaintiff Could Do "Sedentary" Work AND Lift Up To Ten Pounds?

█ Plaintiff asserts that the ALJ's acknowledgement of Plaintiff's past relevant work frequently requiring him to lift up to ten pounds established, most paradoxically, that Plaintiff was in fact unable to perform his past relevant work. The rationale behind this argument is that the ALJ classified Plaintiff's past relevant work as "sedentary" work while at the same time stating that Plaintiff's past relevant work frequently required him to lift up to ten pounds, an amount exceeding the "sedentary" work category and taking Plaintiff's past relevant work into the category of "light" work.

Plaintiff's argument, while at first glance seemingly persuasive, is upon closer inspection full of holes. 20 C.F.R. § 404.1567(a) (1997) provides, in relevant part:

> Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

As the above definition makes plain, "sedentary" work includes lifting up to the ten pounds Plaintiff is said to have been required to lift at his previous job. Although the ALJ may have adopted Plaintiff's language by using the word "frequently" in front of the phrase "lifting up to ten pounds," there is ample evidence in the record to show that Plaintiff's own admission that he seldom had to lift anything belied his description of his lifting activities as frequent. (R. 99) Furthermore, Plaintiff himself admitted that the standing required of him at his previous job was infrequent enough to comfortably fit within the "sedentary" job classification. Thus, this Court finds that there is substan-

tial evidence in the record to support the ALJ's finding that Plaintiff's past relevant work properly fit within the category of "sedentary work."

### B. Did the ALJ Properly Refute the Medical Evidence Presented by Plaintiff's Treating Physician?

█ According to the record, in February of 1996, Plaintiff's treating physician, Dr. Genchi, completed a set of interrogatories and a medical assessment of Plaintiff's functional capacity in which he reported that Plaintiff was unable to perform any work-related activities. (R. 187–192). Ordinarily, the opinion of a treating physician is given controlling weight. *See* C.F.R. § 404.1527 (1997). A treating physician's opinion may be disregarded, however, if it is unsupported by objective medical evidence or is merely conclusory. *Johns v. Bowen,* 821 F.2d 551, 555 (11th Cir.1987); *Bloodsworth v. Heckler,* 703 F.2d 1233, 1240 (11th Cir.1983). It is well established that the opinion, diagnosis, and medical evidence of Plaintiff's treating physician should be accorded substantial weight unless "good cause" is shown for not doing so. *Lamb v. Bowen,* 847 F.2d 698 (11th Cir.1988); *Sharfarz v. Bowen,* 825 F.2d 278 (11th Cir.1987). In this matter, the ALJ found that the objective medical record as a whole was inconsistent with Dr. Genchi's opinion that Plaintiff was incapable of doing his past relevant work. This Court disagrees for the reasons stated below.

A review of the record indicates that Plaintiff was examined by Dr. Genchi on six separate occasions. Dr. Genchi wrote that Plaintiff suffered from "Chronic Obstructive Pulmonary Disease, severe, with Bronchospasm responsive to Bronchodilator," one of the symptoms of which was extreme shortness of breath upon the slightest exertion. (R. 187). Dr. Genchi opined as to how many hours per day Plaintiff was capable of sitting (about five hours) or standing (an hour or less); the kinds of activities in which Plaintiff could engage (he could lift no more than five pounds and could never crouch, stoop, or climb stairs); and whether Plaintiff had the residual functional capacity to work (Plaintiff allegedly required complete freedom to rest frequently and without restriction while lay-

ing down). (R. 189–90). His opinions were based on a series of laboratory tests.

 Dr. Genchi's is the only medical assessment of Plaintiff's physical ability to perform the duties of a job in the record. Therefore, Dr. Genchi's opinions stand uncontradicted and controlling, unless there is something within his clinical findings or the objective laboratory tests which indicates that his opinions should be disregarded. According to the ALJ, contradictory, objective evidence did exist, and he therefore rejected Dr. Genchi's opinion. The ALJ, however, failed to cite to anything in the record which provided the requisite substantial evidence to support his decision. For example, despite the fact that there was no doctor other than Dr. Genchi providing medical evidence in this case, the ALJ stated, in conclusory fashion, that Dr. Genchi's opinion was inconsistent with "the other substantial evidence of record." (R. 79). This other substantial evidence, in total, consisted of the following: In spite of his pain, Plaintiff could do some housework, light cooking, and light grocery shopping; he could go to the doctor without assistance; he claimed he was near death, but did not check into a hospital; he did not use an oxygen tank; he was responsive to bronchodilator treatment; and he showed no signs of edema. (R. 79–80). Based on this paltry evidence, the ALJ presumably inferred that Plaintiff retained the residual functional capacity to perform his past relevant work, thereby substituting his own medical opinion for that of Dr. Genchi. The ALJ's inferences, however, cannot be taken into account in a determination of whether there was substantial evidence in the record to support his or her decision. "As a hearing officer, [the ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional." *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir.1992). Furthermore, the evidence the ALJ cited was insufficient to reject Dr. Genchi's medical opinion. Housework, light cooking, and light grocery shopping are minimal daily activities. As such, they are not dispositive evidence of one's ability to perform sedentary work in a Social Security case. *Walker v. Heckler*, 826 F.2d 966 (11th Cir.1987). As for Plaintiff's responsiveness to bronchodilator treatment, there is no evidence to show that the positive

effects of such treatment lasted longer than fifteen minutes. (R. 106).

 Moreover, in conclusory rejecting Dr. Genchi's opinion, the ALJ also failed to adequately delineate his reasons for doing so. In *MacGregor v. Bowen*, the Eleventh Circuit stated, "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986). It is well settled that the ALJ may ignore the opinion of the treating physician regarding disability only if the opinion is so brief and conclusory that it lacks persuasive weight or is unsupported by any clinical or laboratory findings. *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir.1986); *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir.1983). The ALJ wholly failed to show this was true of Dr. Genchi's opinion. Thus, this Court finds that without the countervailing opinion of another treating/examining physician in the record, and without a more substantial and detailed analysis of the medical evidence of record which the ALJ asserted was inconsistent with Dr. Genchi's opinion, there does not exist substantial evidence in the record to support the ALJ's decision to reject Dr. Genchi's uncontroverted medical opinion.

## C. *Did The ALJ Err In Not Applying The Applicable Two–Prong Test For Evaluating The Credibility Of Plaintiff's Testimony Concerning His Pain?*

 Plaintiff also seeks reversal on the grounds that the ALJ found the Plaintiff's subjective complaints of pain to the degree alleged non-credible. It is well established that pain alone can be disabling. *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir.1987); *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). However, the Plaintiff's testimony of pain standing alone is not conclusive evidence of disability. *Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir.1987). Thus, the Eleventh Circuit has established a two-prong standard that the Commissioner must apply to evaluate a claimant's complaints of pain. The standard requires: (1) evidence of an underlying medical condition;

and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991); *Allen v. Sullivan,* 880 F.2d 1200, 1202 (11th Cir.1989). If an ALJ rejects a claimant's testimony of pain on credibility grounds, he must explicitly state as much and give reasons for that determination. *Parker v. Bowen,* 788 F.2d 698 (11th Cir.1986); *Owens v, Heckler,* 748 F.2d 1511 (11th Cir.1984). Failure to state a reasonable basis for rejection of such testimony mandates the testimony be accepted as true "as a matter of law." *Cannon v. Bowen,* 858 F.2d 1541 (11th Cir.1988). In the instant case, not only did the ALJ fail to apply the two-prong standard for evaluating Plaintiff's testimony regarding his pain, but consequently, he also failed to state a reasonable basis for the rejection of such testimony.

## V. *CONCLUSION*

■■■ When evidence has been fully developed and unequivocally points to a specific finding, the reviewing court may enter the finding that the Commissioner should have made. *Reyes v. Heckler,* 601 F.Supp. 34, 37 (S.D.Fla.1984). Thus, this Court is empowered under 42 U.S.C. § 405(g) to reverse the Commissioner's decision without remand where, as here, the Commissioner determination is in plain disregard of the overwhelming weight of the evidence. *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993); *Bowen v. Heckler,* 748 F.2d 629 (11th Cir.1984). In accordance with the foregoing, it is hereby

**RECOMMENDED** that Defendant's Cross Motion for Summary Judgment be **DENIED** and that Plaintiff's Motion for Summary Judgment be **GRANTED** and the Decision of the Commissioner be **RE-VERSED.** If this Recommendation is adopted, Plaintiff should receive payment, forthwith and hereafter of all benefits to which he is due, past present and/or future, under law.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Lenore C. Nesbitt, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger,* 847 F.2d 745 (11th Cir.1988), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); *RTC v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir.1993).

**RESPECTFULLY SUBMITTED.**