Dorothy COOK, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

Civil Action No. 03–M–742–N.

United States District Court, M.D. Alabama, Northern Division.

Feb. 17, 2004.

Georgia H. Ludlum, Law Offices of Georgia H. Ludlum, Dothan, AL, for Plaintiff.

Leura Garrett Canary, U.S. Attorney's Office, Montgomery, AL, for Defendant.

Jo Anne B. Barnhart, Baltimore, MD, pro se.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Dorothy Cook ["Cook"] has filed this action seeking review of a final decision by the Commissioner (Doc. # 1) pursuant to § 405(g) of the Social Security Act (Doc. # 14, p. 1). Upon review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner should be REVERSED and REMANDED for the reasons set forth herein.

## I. PROCEDURAL BACKGROUND AND FACTS

Cook petitioned for supplemental security income under Title II and Title XVIII of the Social Security Act on 1 November 2000 (R. 99), alleging a disability onset date of 14 February 2000 (R. 99). She was born on 17 September 1961 and was therefore 41 years of age at the time of the hearing (R. 99). Cook dropped out of high school upon completion of the ninth grade, but later received her GED and completed some college courses (R. 46, 47, 111). Before her alleged disability, she had varied work experiences, including employment as a frozen food and dairy clerk, stock clerk, receptionist and insurance clerk in a doctor's office, nursing assistant in a nursing home, seamstress, and assistant supervisor for a company that made condoms and gloves (R. 48–51). She has not worked since 14 February 2000 (R. 48).

An Administrative Law Judge ("ALJ") heard Cook's petition for social security benefits on 9 July 2002 (R. 43–76). Thereafter, the ALJ issued an adverse decision on 12 December 2002 (R. 27–34). The Appeals Council denied Cook's petition for review on 16 May 2003, thus rendering the ALJ's decision the Commissioner's final determination (R. 5–7). This action followed on 15 July 2003 (Complaint, Doc. # 1).

## II. STANDARD OF REVIEW

 The standard of review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983)). The court must find the Commissioner's factual findings conclusive if they are supported by substantial evidence.[1] *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997). "There is no pre-

---

1. In *Graham v. Apfel,* 129 F.3d at 1422, the Court of Appeals has stated that:
 Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

sumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles v. Chater*, 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

### A. Standard for Determining Disability

An individual who files an application for Social Security disability benefits must prove that he is disabled. *See* 20 C.F.R. § 416.912 (1999). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that he is disabled. *See* 20 C.F.R. § 416.920 (1999). The ALJ must evaluate the claimant's case using this sequential evaluation process, *Ambers v. Heckler*, 736 F.2d 1467, 1469 (11th Cir.1984), and the steps are as follows:

1. If the claimant is working or engaging in substantial gainful activity, he is not disabled: However, if the claimant is not working or engaging in substantial gainful activity, the Court must consider whether the claimant has a severe impairment.

2. If the claimant does not have a severe impairment, he is not disabled. A severe impairment is defined as a condition that precludes one from performing basic work-related activities. If the claimant has a severe impairment, the Court must then consider whether the impairment

has lasted or is expected to last for more than twelve (12) months.

3. If a claimant's impairment has lasted or is expected to last for a continuous period of twelve (12) months or more and it is either included on or equivalent to an item in a list of severe impairments, as found in Appendix I of the regulations, the claimant is disabled. If neither of the above conditions, when considered in association with the continuity requisite of twelve (12) months, is deemed true, the ALJ must go on to step 4 of the evaluation sequence.

4. If it is determined that the claimant can return to previous employment, considering his residual functional capacity ["RFC"] and the physical and mental demands of the work that he has done in the past, the claimant will not be considered disabled. If it is determined that the claimant cannot return to previous employment, the SSA must continue to step 5 in the sequential evaluation process.

5. If, upon considering the claimant's RFC, age, education, and past work experience, the SSA determines that the impairments determined do not preclude the claimant from performing a significant number of jobs that are available in the national economy, the claimant will not be considered disabled within the meaning of the Social Security Act. Therefore, s/he will not be entitled to benefits pursuant to 42 U.S.C. §§ 401 et seq. and/or 42 U.S.C. §§ 1381. If, however, it is determined that there are not a significant number of available jobs that the claimant can perform in the national economy and the impairment meets the duration re-

quirement, the claimant will be considered disabled.

See §§ 20 C.F.R. 404.1520(a)-(f), 416.920(a)-(f).

## B. The ALJ's Findings

The ALJ made the following findings within the structure of the sequential evaluation process as outlined above:

1. Cook has not engaged in any substantial gainful activity since her alleged disability onset date (R. 33).

2. Cook has severe impairments (R. 33). However, her listed impairments, when considered individually and in combination, do not meet or equal in severity, any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 33).

3. Cook's "allegations regarding her impairments and functional limitations are not entirely credible" (R. 33).

4. Cook cannot perform any past relevant work, however she "has been able to perform one or more occupations existing in significant numbers in the national economy as illustrated by the testimony of the vocational expert" (R. 33).

5. Cook "has not been under a disability at any time through the date of this decision" (R. 33).

## C. Application of the Standard to the Claimant and Arguments of the Parties

Based on the ALJ's findings, Cook survives step one and step two of the sequential evaluation process, because she has not engaged in any substantial gainful activities since her alleged onset date and she has severe impairments (R. 33), although they are not explicitly specified. However, she does not survive step three, because her severe impairments, when considered individually and/or in combination with others, do not meet the equivalent of a listed impairment (R. 33). As a result, according to the ALJ, Cook is not disabled within the meaning of the Act (R. 33).

As a matter of law, even if the ALJ determines at step three of his analysis that a claimant does not have a combination of impairments that meet the equivalent of a listed impairment, there can nonetheless be a finding of disability. The finding can be triggered by the ALJ's assessment at step four, a determination of the claimant's residual functional capacity ["RFC"].

In the instant matter, the ALJ assessed Cook's RFC. Based on his assessment, the ALJ determined that Cook had the ability to perform "sedentary" work (R. 32). He further determined that there were a number of jobs available in the national economy that Cook can perform (R. 32). Cook disagrees, and contends that the ALJ erred as follows:

1. The ALJ erred when determining that her severe impairments, when considered in combination, did not meet the equivalent of a listed impairment. Moreover, the ALJ did not consider her depression and anxiety as severe impairments (Doc. # 14, pp. 11–15).

2. The vocational expert's ("VE") findings with regard to the jobs that Cook could perform were in error because the ALJ failed to provide the VE with all of her severe impairments in his hypothetical and the conclusion is not supported by the opinions of physicians of record (Doc. # 14, pp. 15–18).

3. The ALJ failed to give proper consideration to Cook's subjective complaints of pain (Doc. # 14, pp. 18–19).

In response, the Commissioner argues that substantial evidence supports her decision (Doc. #16, p. 3). For the reasons set forth herein, the Court agrees with Cook.

### D. Analysis of Evidence

The ALJ states that "[Cook's] medical problems result in impairments which are 'severe' under the Act, but do not meet or equal the criteria for any impairment described in Appendix 1, Subpart P, Regulations No. 4" (R. 32). The court believes that this statement, standing alone as it does, is an insufficient basis upon which to surmise whether the "severe impairments" analyzed by the ALJ are fully reflective of Cook's condition for the purpose of determining disability. The only other compass from which one might ascertain what the ALJ deemed severe is the hypothetical posed to the VE:

> And I propose a hypothetical individual to you who is a 40 year-old woman, 5′2″, 190, has a driver's license and drives, she's married, she is a mother of three children, ninth grade education went on to get a GED, took some college courses, she can certainly read, write and handle money. She has a work history o[f][sic] grocery clerk, store clerk and medical office clerk and nursing assistant. And this is an individual with a back problem. She has **a bulging disk, L–4/L–5** which causes pain in her back, radiates down her left leg all the way to her knee and she **uses a cane to ambulate,** was prescribed by a doctor, and the MRI shows some sciatic changes at L–4/L–5 and O–5/S–1. But it shows up as a **bulge with mild stenosis** and that is, that is the opinion as recently as October 29, 2001, **mild bulging disk producing mild stenosis with left radicular pain all which has been testified to.** She goes for periods without medication. She's suffering from *situational depression* and has worked some of her problems out with her husband.

On physical examination she complained of shortness of breath on respiratory, there are no visual problems, cardiovascular was no problems, the GI showed no nausea, vomiting, diarrhea, constipation, muscular skeletale [sic] she had arthrologist (Phonetic), her back and her left side fully (INAUDIBLE). *She complained of anxiety,* difficulty sleeping, wakes up during the night, she is well developed, well nourished individual with no apparent distress. Blood pressure 112/78, weight was 192, height was 63 and½ inches, which has been testified to. Nose and throat clear, mouth several missing teeth, otherwise normal mucus membranes, the ears are in tact. Hearing was normal. Neck was supple. Infatics negative. Coratas are two plus. Dorsal (INAUDIBLE) postural tubals are two plus, radius two plus, infatics no problem. Lungs were clear to procession, heart is regular no murmur. Gallop (INAUDIBLE), abdomen, bell sounds were normal, no (INAUDIBLE) the abdomen was normal. As far as the back, showed normal curdle. She lacks touching her toes on flection. Bow the back by six inches, the extension was unremarkable, there was no sign of scoliosis [sic], straight leg raises are negative, there's no tenderness in the back even to form (INAUDIBLE) in the (INAUDIBLE) area. The locomotor she showed **a limp on the left side,** apparently causes pain during weight, she walks with a cane, she can walk on her tip toes holding onto the table, she can squat but has to use her left arm to help pull herself back up. She can climb on the exam table but is slow doing it. Neurologically alert, oriented times three, cranial nerves two to seven are intact, DTR are two plus to three plus,

metrically bilaterally, no motor sensory deficits, hand dexterity was normal, motor speech strength was normal, grip strength was normal, **chronic lower back pain radiant to the left sciatic area on impression. Mostly secondary tocsin (Phonetic) arthritis with pain on weight baring, of the left leg** with no signs of any radicular symptoms, and *the rest were really subjective not objective declaration, which I'm not going to go into* ...

(R. 66–68). The court notes that the record is replete with medical records spanning from 7 February 2000 to 23 July 2002 (R. 167–261). Based on the issues the claimant raised on appeal, however, only the findings related to carpal tunnel syndrome, anxiety, and depression will predominate the analysis contained herein.

A number of medical opinions contained in the record indicate that Cook suffers from anxiety disorder, depression, and carpal tunnel syndrome. However, the ALJ referenced Cook's depression as only "situational," which suggests that, upon resolution of certain problems connected with her third marriage and her finances, the depression will dissolve.

Furthermore, stated that "[s]he complained of anxiety," when posing his hypothetical to the VE, rather than properly stating that Cook's physicians have "diagnosed" her with anxiety disorder. Finally, the ALJ did not mention Cook's prognosis of carpal tunnel syndrome anywhere in his address to the VE.

1. **Anxiety, Depression, Subjective Complaints of Pain, and the Authority Accorded Physician Opinions**

 a. *Medical Treatment and Diagnoses Related to Anxiety, Depression, and Carpal Tunnel Syndrome*

Dr. Vargas performed an assessment of Cook's mental residual functional capacity on 25 June 2001. Although his examination did not suggest grave mental abnormality, he did determine that she suffered from depression (R. 187). This conclusion is corroborated by the determinations of at least three (3) other healthcare professionals, Drs. William King, Donna Fleitas, and Beatrice Johnson–Russell. In addition to providing opinions that Cook suffered from depression, these doctors also determined that Cook suffered from carpal tunnel syndrome and general anxiety.

Records indicate that Dr. Johnson–Russell treated Cook from 2 November 2000 until 21 May 2001 (R. 203). Based on her observations, she reported to the Disability Determination Service in Birmingham, that Cook suffered from (a) chronic back pain, depression, and generalized anxiety (R. 204). Medication previously prescribed for each of these disorders was outlined, also (R. 204).

Thereafter, plaintiff was examined by Dr. King on 5 June 2001 (R. 181). Consistent with Dr. Johnson–Russell's report, he concluded that Cook suffered from:

> IMPRESSION: 1—Chronic lower back pain radiating into the left sacroiliac area most likely secondary to osteoarthritis with pain on weight bearing on the left leg but no signs of any radicular symptoms.
>
> *2—Anxiety depression.*
>
> 3—Status post total abdominal hysterectomy and oophorectomy for endometrial cancer
>
> **Based on these medical findings despite the above mentioned impairment her ability to do work related activity such as sitting is impaired** in that she states that she can sit no longer than 20 to 30 minutes without having to fidget and move around.

(Emphasis added)(R. 183).

One week later, on 12 June 2001, Cook presented to Dr. Johnson–Russell again.

Dr. Russell–Johnson indicated that Cook suffered from "generalized anxiety," "major depression," "chronic low back pain," and "carpal tunnel syndrome" (R. 207–208). These findings were consistent with her previous diagnoses on 24 April 2001 and 21 May 2001 and subsequent diagnoses on 6 September 2001.

With regard to her mental state, Cook presented to Dr. Donna Fleitas, a licensed psychologist who performed a consultative examination of Cook on 24 May 2001. Dr. Fleitas concluded that Cook suffers from dysthmic disorder. Further, she stated, consistent with other medical opinions, that

1. ***Depression is evident in this client and appears to be quite long-standing*** although exacerbated by physical limitations.

2. Dorothy is not able to function independently due to physical limitations, pain, and depression. She verbally relates well but the energy level and depression negates meaningful sustained interactions. Her effort appeared genuine.

(Emphasis added)(R. 180).

*b. The Commissioner's Response to the Medical Evidence of Record*

■ The ALJ declined to mention specifically the treatment of Dr. Johnson–Russell or Dr. Vargas in his opinion. However, the Commissioner contends that a failure to discuss the opinions of various physicians expressly does not mean that the ALJ failed to consider them. Although the Commissioner's argument is not entirely unreasonable, acceptance of the argument and applying it consistently would require courts to make routine and arbitrary assumptions regarding the objects of the ALJ's considerations. In the absence of specific mention by the ALJ of all of the factors, opinions, and circumstances that contributed to his findings,

the court must conclude that the ALJ did not consider them.

In Social Security cases, claimants allege disability. At the administrative level, their benefits, and their livelihoods, in essence, may have been denied. When sitting with their families and their lawyers to determine the bases for denial of benefits, they are entitled to know and understand, with a reasonable certainty, the reasons for the denial. The ALJ's opinion in this case does not adequately address that entitlement. Moreover, ALJ is required to explain his findings explicitly not just for the claimant's benefit. Clear and specific findings are also the *sine qua non* of effective review in this court.

The Commissioner has advised that "[a]lthough he did not specifically discuss the opinion of Dr. Vargas, the ALJ stated that he made his decision '[a]fter carefully reviewing all of the evidence of record.'" (Doc. # 16, p. 3 citing R. 27). The court deems this broad reference as inadequate.

*c. The Law on Physician Opinion and the Court's Finding*

"The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir.1997) (*citing MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler,* 776 F.2d 960, 961–62 (11th Cir.1985)). The Commissioner's regulations also recommend a similar preference for the opinions of treating doctors.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations. 20 CFR § 404.1527(d)(2).

▇▇▇▇ The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *MacGregor,* 786 F.2d at 1053. "Good cause" exists where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. See *Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir.1987); *Sharfarz v. Bowen,* 825 F.2d 278, 280–81 (11th Cir.1987). Good cause also exists where the doctors' opinions were conclusory or inconsistent with their own medical records. See *Jones v. Department of Health & Human Services,* 941 F.2d 1529, 1532–33 (11th Cir. 1991); *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir.1991).

Interestingly enough, consulting physician opinions mirrored the opinions of Cook's treating physician. The ALJ neither noted contrary medical opinions, nor reasonably concluded that the doctors' findings were inconsistent with medical records for all of the pertinent opinions referenced herein.[2] Therefore, the court concludes that in addition to the absence of evidence that the ALJ considered Cook's "severe impairments", the record is also devoid of evidence that the ALJ analyzed and considered Cook's anxiety disorder, carpal tunnel syndrome, and depression.

This court is ever mindful of and deeply committed to making responsible and finite decisions as to whether a social securi-ty claim was rightfully denied. Yet, the ALJ's opinion in this case has compromised the court's consideration of the requisite factors. In consideration thereof and for the reasons stated herein, this matter is REMANDED to the ALJ with specific instruction to identify expressly all of the claimant's severe impairments and to make other determinations consistent with this opinion.

The court further notes that the claimant raises issues as to whether her subjective allegations of pain were properly considered and whether the ALJ properly concluded that she was capable of performing sedentary work. Because of the brevity of the ALJ's analysis and his failure to give express consideration to Cook's "severe impairments," the court cannot find the analysis appropriate.

**2. Cook's Ability to Perform Sedentary Work**

▇▇▇ The ALJ did determine that Cook can perform sedentary work (R. 32). However, that determination resulted from the opinion of the vocational expert, an opinion shaped by a flawed hypothetical that failed to outline explicitly all "severe impairments" required for full consideration. As a follow-up to the ALJ's colloquy with the VE, Cook's counsel engaged in the following exchange:

ATTY: How long would someone have to sit for any of these jobs, the telephone sales clerk or the caller operator?

VE: In an eight hour work day?

ATTY: Could you kind of give me just what your job description would be?

VE: That typically would involve sitting six hours minimum out of an eight

---

**2.** As a matter of fact, the ALJ could not raise issues of inconsistency in opinion and evidence where he did not note evidence.

hour work day, very little if any lifting requirements, postural limitations really no significant stooping, bending, cruoching [sic], crawling. So basically these positions require bilateral manual dexterity and the ability to sit for six hours in an hour [eight] hour work day.

ATTY: With the carpal [sic] tunnel in the left hand impact on any of that?

[VE]: Depending on the severity. If it's mild, moderate, severe. That's, the only way I can answer the question is with the severity level. But it could. It would be vocationally significant, yes.

ATTY: Well, Dr. Johnson doesn't get into the severity of it on hers.

VE: Well, we need that, as you know, more specific functional limitations. All I can testify is that carpal [sic] tunnel can't be vocationally significant. Mild would not impact the ability to perform most positions, even sedentary. When you get moderate severe extreme limitations that would impact.

(R.74).

Pursuant to the regulations, sedentary work is work that consists of eight-hour days. No medical evidence of record suggests that Cook can do eight hours of work on a daily basis, even when the functions of sitting, standing and walking are combined (Medical evidence of record, with particular attention paid to the report of Dr. Moll, R. 248–249). Accordingly, this issue is also remanded to the ALJ for further deliberation not inconsistent with the findings herein.

### 3. Cook's Subjective Allegations of Pain

■ Cook alleged a number of subjective allegations of pain. As a matter of law,

there must be evidence of an underlying medical condition and, either objective medical evidence that confirms the severity of the alleged pain or other symptoms arising from the underlying medical condition, or the presence of an objectively determined medical condition of such severity that it reasonably could be expected to give rise to the alleged pain or other symptoms.

*Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991) citing *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir.1986). The court does not question the credibility or weight that the ALJ gave to Cook's subjective allegations of pain related to claims other than carpal tunnel syndrome, depression, and anxiety disorder since the other allegations have not been the focus or subject of this review. However, because the aforementioned conditions were not considered in generally evaluating Cook's severe impairments, the court concludes that her subjective allegations of pain related to the same were also not considered. As these subjective allegations are consistent with medical opinion, and thereby permissible under the law, the court hereby remands this case on the issue of Cook's subjective allegations of pain associated with carpal tunnel syndrome, anxiety, and depression.

### IV. CONCLUSION

Therefore, it is hereby ORDERED that the decision of the Commissioner is REVERSED and REMANDED for further deliberation not inconsistent with this opinion. Specifically, the Commissioner is instructed to do the following: (1) explicitly outline all of Cook's severe impairments; (2) determine whether Cooks severe impairments, including anxiety and depression, meet the equivalent of a listed impairment; and (3) if Cook's severe impairments, as listed, do not meet the

equivalent of a listed impairment, determine whether there is any work that she can perform, consistent with his residual functional capacity and other factors worthy of consideration not inconsistent with this opinion.