Tramaine TURNER ex rel. Hassan TUNER, plaintiff

v.

Jo Anne B. BARNHART, Commissioner, Social Security Administration, defendant.

Civil Action No. 1:04cv986–M [WO].

United States District Court, M.D. Alabama, Southern Division.

July 18, 2005.

Georgia H. Ludlum, Dothan, AL, for plaintiff.

Stephen Michael Doyle, Washington, DC, for defendant.

## MEMORANDUM OPINION

McPHERSON, United States Magistrate Judge.

Claimant Tramaine Turner ["Turner"] has filed this action on behalf of her minor son, Hassan ["Hassan"], seeking review of a final decision by the Commissioner of Social Security ["Commissioner"] (Doc. #1) pursuant to 42 U.S.C. § 1383(c)(3) (2004). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be reversed and remanded.

## I. FACTS AND PROCEDURAL BACKGROUND

At the age of four, before he began kindergarten, Hassan was diagnosed with Attention Deficit Hyperactivity Disorder ["ADHD"] (R. 282). Throughout most of his first few years of school, Hassan's condition had no apparent effect on his academic performance, including his grades, which were As and Bs, and his classroom behavior (R. 259, 310, 315–15, 428–30). Beginning toward the end of second grade and continuing at least until the end of the 2003–04 school year, however, Hassan's performance and behavior declined, eventually to the point that he was failing most of his classes and his teachers regularly punished him for disrupting class and reacting badly to criticism and correction (R. 142–45, 147–50, 177–87, 194–228, 233–281, 348–397).[1]

Attributing this downturn to Hassan's medical condition, Turner first applied for Supplemental Security Income ["SSI"] benefits on Hassan's behalf in February 2000 during his second grade year (R. 106). This application was denied initially,

---

1. Toward the end of his second grade year, Hassan was also diagnosed with Oppositional Defiant Disorder (R. 288). He has also been diagnosed with enuresis and anemia, but the evidence provides little insight into either of these conditions and offers no indication how, if at all, they may influence a disability determination. (R. 310).

and Turner's request for a hearing was denied as untimely (Doc. # 12, p. 2). A second application also was denied initially, and a subsequent hearing before a Social Security Administration ["SSA"] administrative law judge ["ALJ"] resulted in an unfavorable decision (R. 17–25). The SSA Appeals Council ["AC"] denied Turner's request for a review of the ALJ's decision; therefore, the ALJ's opinion constitutes the Commissioner's final decision. Turner then filed this timely lawsuit (Doc. # 1).

## II. STANDARD OF REVIEW

■ The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir.1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir.1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir.1997)).[2]

This is true despite the fact that "[s]ubstantial evidence may even exist contrary to the findings of the ALJ." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir.1991). "There is no presumption, however, that the Commissioner followed the appropriate legal standards in deciding a claim for benefits or that the legal conclusions reached were valid." *Miles*, 84 F.3d at 1400 (citations omitted).

## III. DISCUSSION

In addition to her general argument that the Commissioner's decision is not supported by substantial evidence, Turner contends that:

- the ALJ committed reversible error by failing to consider Hassan's school records (Doc. # 12, pp. 5–10); and, alternatively,

- remand is required to allow the ALJ to review newly acquired evidence (Doc. # 12, pp. 10–12).

As discussed *infra*, the Court agrees that the ALJ failed to consider relevant evidence on the record before him, and this failure compels the court to reverse and remand the Commissioner's decision. Therefore, it is not necessary to review the ALJ's factual findings in detail. Nor is it necessary for the court to determine whether the allegedly newly acquired evidence would require remand.

### A. Review of Hassan's School Records

For purposes of evaluating eligibility for SSI benefits, a child is considered disabled when he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2004). Perhaps the most important evidence the SSA "will" consider in determining the severity of a child's "functional limitations" are school records, including standardized tests and statements from teachers.

If you go to school, we will ask for information from your teachers and other school personnel about how you are functioning there on a day-to-day basis compared to other children your age

---

2. In *Graham v. Apfel*, 129 F.3d at 1422, the Court of Appeals stated that:

Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

who do not have impairments. We will ask for any reports that the school may have that show the results of formal testing or that describe any special education instruction or services, including home-based instruction, or any accommodations provided in a regular classroom.

20 C.F.R. § 416.924a(a)(2)(iii).

The social security regulations go on to state:

> Information about what you can and cannot do, and how you function on a day-to-day basis at home, school, and in the community, allows us to compare your activities to the activities of children your age who do not have impairments.
>
> .    .    .    .    .
>
> [I]f you attend school (including preschool), the records of people who know you or who have examined you are important sources of information about your impairment(s) and its effects on your functioning. Records from physicians, teachers and school psychologists, or physical, occupational, or speech-language therapists are examples of what we will consider. If you receive early intervention services or go to school or preschool, we will consider this information when it is relevant and available to us.
>
> .    .    .    .    .
>
> [W]e will ask your teacher(s) about your performance in your activities throughout your school day. We will consider all the evidence we receive from your school, including teacher questionnaires, teacher checklists, group achievement testing, and report cards

20 C.F.R. §§ 416.924a(b)(3), (7).

■ While an ALJ is not required to discuss every piece of evidence on the

record, *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D.Ala.2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)), he must nonetheless "develop a full and fair record", which, at least, means that his opinion must describe his analysis with enough detail to satisfy a reviewing court that he gave all of the relevant evidence before him its due regard. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981).

Without this information, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* "Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Arnold v. Sec'y of Health, Ed. and Welfare*, 567 F.2d 258, 259 (4th Cir. 1977) (quoting *Oppenheim v. Finch*, 495 F.2d 396 (4th Cir.1974)) *quoted in Cowart*, 662 F.2d at 735.

■ The record in this case contains 103 pages of school records,[3] which include at least three teacher questionnaires generated by the SSA, as compared to 66 pages of medical records. (R. 142–45, 147–50, 177–87, 194–228, 233–81, 282–347). Included among the school records are report cards and standardized test scores, as well as detailed notes from teachers and letters from teachers, nurses and administrative staff regarding Hassan's behavior.

The impact of these materials upon the outcome in this case is not for this court to decide. It is enough to note that they are

---

**3.** Not including the additional 50 pages of school records Turner provided to the AC after the ALJ had issued his opinion. (R. 348–97).

highly relevant and perhaps probative. Yet, the ALJ's opinion fails to mention the school records, and it lacks any indication that he knew either of their existence or his responsibility to discuss them. His "Evaluation of the Evidence" refers only to Hassan's medical records and Turner's testimony at the hearing. "In the absence of specific mention by the ALJ of all of the factors, opinions, and circumstances that contributed to his findings, the court must conclude that the ALJ did not consider them." *Cook v. Barnhart,* 347 F.Supp.2d 1125 (M.D.Ala.2004). The ALJ's failure constitutes legal error.[4]

### B. The Appropriate Remedy

■ Having found that the ALJ erred, the court must next determine the appropriate remedy. Turner contends that

> [a] court is empowered under 42 U.S.C. § 405(g) to reverse the Commissioner's decision without remand in cases where the Commissioner's decision is "in plain disregard of the overwhelming weight of the evidence." *Venette v. Apfel,* 14 F.Supp.2d 1307, 1314 (S.D.Fla. 1998). In cases where the evidence has been fully developed and "unequivocally points to a specific finding," the court may enter the finding that the Commissioner should have made.

(Doc. # 12, p. 9). Turner's point is misdirected. Both her argument and the court's opinion are predicated on the fact that the evidence has *not* "been fully developed." *Id.* Furthermore, while the evidence not reviewed by the ALJ may change the ultimate outcome in this case, it certainly does not compel such a conclusion. Therefore, reversal without remand is not appropriate.

Nevertheless, because the ALJ's error may have prejudiced Hassan, reversal is warranted, and the case should be remanded to allow the ALJ to consider the entire administrative record, including the school records submitted for the AC's review after the ALJ's opinion issued (R. 348–397). *See Moore v. Barnhart,* 405 F.3d 1208 (11th Cir.2005) (discussing sentence four remands). The additional evidence—school records created within the relevant time period shortly before the ALJ issued his opinion—is material and constitutes part of the administrative record.[5] *Cf.* 20 C.F.R. § 404.970(b); *Threet v. Barnhart,* 353 F.3d 1185 (10th Cir.2003) (discussing review of evidence submitted to the appeals council after the ALJ has issued an opinion).

## IV. CONCLUSION

Therefore, it is hereby

ORDERED that the Commissioner's final decision be and is REVERSED and REMANDED, pursuant to sentence four of 42 U.S.C. 405(g), for further deliberation not inconsistent with this opinion. Specifically, the Commissioner is instructed to discuss in detail all of the evidence in the administrative record, including Hassan's relevant school records.

4. The court is not suggesting that the ALJ's discussion of the evidence reviewed was insufficient. On the contrary, the ALJ thoroughly reviewed the medical evaluations and Turner's testimony. Considering the importance the SSA assigns to a child's school records, the court holds only that they are deserving of similarly thorough treatment.

5. The court does not decide whether this evidence alone would warrant remand.

Arley EAST, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 3:04CV624–M.

United States District Court,
M.D. Alabama,
Eastern Division.

July 18, 2005.

James P. Frey, Jr., for plaintiff.

Angela G. Thornton–Millard, Frank V. Smith, III, and R. Randolph Neeley, for defendant.

## ORDER ON MOTION

McPHERSON, United States Magistrate Judge.

This case is now before the court on the Plaintiff's motions for attorney fees and costs under the Equal Access to Justice Act ["EAJA"], 28 U.S.C. §§ 1920, 2412 (2004) (Docs.# 25, 26). The Commissioner

responded to the motion without objection and requested an order awarding the amount sought (Doc. # 30).

Having reviewed the parties' submissions, the court concludes that the plaintiff is a prevailing party within the meaning of section 2412, the government's position was not substantially justified, and the plaintiff's application for fees was timely filed. The court does not agree with the plaintiff's calculation of attorney fees, however.

## DISCUSSION

The plaintiff has requested attorney fees in the amount of $5,281.55 for 34.3 attorney hours, which represents an hourly rate of $153.98 (Doc. 26, ¶ 9). This rate reflects a base of $125 per hour, which is the maximum rate allowed under section 2412(d)(2)(A), adjusted in accordance with the Consumer Price Index ["CPI"] for March 2005. *See* United States Department of Labor, Bureau of Labor Statistics, *Consumer Price Indexes*, http://www.bls.gov/cpi/home.htm.

■ Calculating attorney fees under the EAJA in the Eleventh Circuit requires the court to determine first whether the "prevailing market rates for the kind and quality of the services furnished", which is how the EAJA defines what is a reasonable attorney fee, exceed the statutory ceiling of $125. § 2412(d)(2)(A); *Meyer v. Sullivan*, 958 F.2d 1029, 1033 (11th Cir.1992)

(outlining a two-step process). Evidence provided by the plaintiff establishes that the prevailing market rate for his attorney's services is well above the statutory ceiling and well above the amount sought by the plaintiff.

The defendant has neither provided evidence to the contrary nor objected, and the court takes judicial notice of opinions that have approved similar fees in this area. *See, e.g., Thornton v. Barnhart*, No. 03–cv–683 (M.D.Ala. May 3, 2005) ($191); *Ballard v. Barnhart*, 329 F.Supp.2d 1278 (N.D.Ala.2004) ($147.63). Therefore, the court finds that the hourly rate of $153.98 is reasonable in this case.

■ "The second step, which is needed only if the market rate is greater than [$125] per hour, is to determine whether the court should adjust the hourly fee upward from [$125] to take into account an increase in the cost of living or a special factor." *Id.*[1] The court finds that the increase in the cost of living since the EAJA was amended in 1996 to increase the fee cap to $125 merits an inflationary adjustment, and the court now turns its attention to the method of calculating the adjustment.

■ The plaintiff suggests that the adjustment should be based on the CPI for March 2005.[2] This results in an upward adjustment of 23.19 percent, which raises the $125 ceiling to $153.98, the plaintiff's figure.[3] All of the Circuit courts outside

---

1. At the time of the *Meyer* opinion, the EAJA imposed a $75 per hour ceiling.

2. The plaintiff and the court both rely on the CPI for "All Urban Consumers" with a base period of 1982–1984. *See also Dewalt v. Sullivan*, 963 F.2d 27, 28–30 (3d Cir.1992) (explaining the rationale underlying using the CPI reflecting the cost of living as opposed to the CPI that more accurately reflects the market value of legal services); *Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir.1992) (same).

3. To get this figure, subtract the CPI for the base year ["base CPI"], 1996 (the year the statutory ceiling was changed from $75 to $125), from the CPI for the period the court uses as the appropriate measure for adjustment ["adjustment CPI"] during which services were performed. In this case, the plaintiff used the figure from March 2005, which was 193.3. The average CPI for 1996 was 156.9, leaving a difference of 36.4 index points. The difference is then divided by the base CPI and then multiplied by 100 to arrive

the Eleventh Circuit that have addressed this issue have determined that basing an inflationary adjustment on the most recent CPI without regard to the time when services were actually provided imposes upon the government a charge for delayed payments, which is tantamount to interest and is impermissible absent an express legislative waiver.[4] *Sorenson v. Mink,* 239 F.3d 1140, 1148–49 (9th Cir.2001); *Kerin v. U.S. Postal Service,* 218 F.3d 185, 194 (2d Cir. 2000); *Masonry Masters, Inc. v. Nelson,* 105 F.3d 708, 710–714 (D.C.Cir.1997); *Marcus v. Shalala,* 17 F.3d 1033, 1038–40 (7th Cir.1994); *Perales v. Casillas,* 950 F.2d 1066 (5th Cir.1992); *Chiu v. U.S.,* 948 F.2d 711, 719–22 (Fed.Cir.1991).

Each of these courts relied on the Supreme Court case of *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), to reach this conclusion. The six-justice opinion in *Shaw* summarized the "no-interest rule" by stating that "interest cannot be recovered in a suit against the Government in the absence of an express waiver of sovereign immunity from an award of interest." 478 U.S. at 311, 106 S.Ct. 2957. The rule "permit[s] the Government to occupy an apparently favored position, by protecting it from claims for interest that would prevail against private parties." *Id.* at 315–16, 106 S.Ct. 2957 (internal quotations and citations omitted).

The district court in *Shaw* had determined that an award of attorney fees under Title VII should be adjusted "to com-

pensate counsel for the delay in receiving payment for the legal services rendered." *Id.* at 313, 106 S.Ct. 2957. Doing so, the lower court held,

> is appropriate because the hourly rates used for the lodestar represent the prevailing rate for clients who typically pay their legal bills promptly, whereas court-awarded fees are normally received long after the legal services are rendered. An increase for delay is designed to compensate the attorney for the money he could have earned had he been paid earlier and invested the funds.

*Id.*[5] The D.C. Circuit determined that the no-interest rule would preclude such an award because "compensation for delay" was the "functional[ ] equivalent" of interest. *Id.* Nevertheless, the court interpreted Title VII as an express waiver of sovereign immunity for such a charge. *Id.*

The Supreme Court disagreed on the latter point. Addressing first the contention that Title VII expressly waived sovereign immunity,[6] the Court instructed:

> In analyzing whether Congress has waived the immunity of the United States, we must construe waivers *strictly in favor of the sovereign, see McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951), and not enlarge the waiver *beyond what the language requires.* The no-interest rule provides an *added gloss of strictness* upon these usual rules:

at the percent by which the CPI increased or decreased (36.4/156.9 × 100 = 23.19).

4. The EAJA does allow for imposition of interest in the event the United States appeals an attorney fee award. 28 U.S.C. § 2412(f). The interest accrues "from the date of the award through the day before the date of the mandate of affirmance" of the award. *Id.*